IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GREGORY HUGHES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:16cv708–HEH |
| | ) |
| MUSSELMAN HOTELS | ) |
| MANAGEMENT, LLC, doing | ) |
| business as The Westin Richmond, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(Granting Defendant's Motion to Dismiss)

Plaintiff Gregory Hughes ("Plaintiff") brings suit against his former employers, Defendants Musselman Hotels Management, LLC ("Musselman") and Forest Avenue Associates, LLC ("Forest Avenue") (collectively "Westin") for violations of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). Plaintiff also alleges claims against Mountjoy Chilton Medley LLP ("MCM"), a limited liability partnership of Certified Public Accountants, for interference and retaliation under the FMLA.

This matter comes before the Court on MCM's Motion to Dismiss. (ECF No. 9.) MCM seeks dismissal of Plaintiff's FMLA claims, arguing that Plaintiff has failed to plead a plausible claim that MCM is Plaintiff's employer within the meaning of the statute. MCM also asserts that Plaintiff has failed to plead an actionable claim of interference or retaliation as contemplated by the FMLA. Each side has filed memoranda

supporting their respective positions. For the reasons set forth below, the Court will grant Defendants' Motion.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). At this stage, the Court's analysis is both informed and constrained by the four corners of Plaintiff's Complaint. Viewed through this lens, the facts are as follows.

In March 2010, Westin hired Plaintiff as a Front Desk Associate. (Compl. ¶ 11, ECF No. 1.) Westin promoted Plaintiff to Front Desk Supervisor in June 2010. (*Id.*) In October 2011, Westin again promoted Plaintiff, this time to the position of Guest Services Manager. (*Id.*) During this period, Plaintiff received generally positive performance evaluations. (*Id.*)

For many years, Plaintiff has suffered from an anxiety disorder that requires continuing medical treatment. (*Id.* ¶ 7.) This disorder substantially affects Plaintiff's cognitive function, thinking, and concentration, and can significantly impair his ability to interact with others. (*Id.*) On or about April 27, 2012, Plaintiff suffered an anxiety attack while at work, an episode which required medical attention and prescription medication. (*Id.* ¶ 12.) Thereafter, Plaintiff requested and received from Westin one week of medical leave. (*Id.*) Thereafter, Plaintiff controlled his anxiety using medication. (*Id.*)

2

On January 26, 2015, Plaintiff suffered another anxiety attack at work. (*Id.* ¶ 15.) This time, Plaintiff went to the front desk supervisor, Shonta Johnson ("Johnson"), and reported that he was in terrible pain. (*Id.*) Plaintiff requested that Johnson call an ambulance. (*Id.*) As a result, emergency medical services, accompanied by Henrico police responded to the hotel and transported Plaintiff to the hospital. (*Id.* ¶ 15–16.) Plaintiff was treated and released that same day, and the emergency room physician provided him with a note stating that he could return to work without restriction. (*Id.* ¶ 16.)

Although the hospital had released Plaintiff to return to work without restriction, Plaintiff's supervisor Feliks Schwartz ("Schwartz") required Plaintiff to obtain a second medical release from his primary care physician. (*Id.* ¶ 18.) Schwartz also criticized Plaintiff for requesting that Johnson call 911 and suggested that Plaintiff had embarrassed the hotel. (*Id.* ¶ 17.)

Plaintiff's primary care physician released him to return to work on January 30, 2015, but Schwartz refused to accept this release. (*Id.* ¶ 18–19) Instead, Schwartz directed Plaintiff to submit to psychological and personality testing as a condition of returning to work. (*Id.* ¶ 20.) Following this testing, Plaintiff was again released to work without restriction. (*Id.* ¶ 22.)

On February 11, 2015, Plaintiff alleges that Schwartz contacted Tom Hillman ("Hillman"), Westin's Chief Operating Officer, and formulated a plan to fire Plaintiff because of his disability and because he took medical leave. (*Id.* ¶ 24.) Schwartz and

Hillman allegedly conspired to create a pretext for Plaintiff's firing to avoid liability under the ADA and FMLA. (*Id.*)

On February 13, 2015, Plaintiff was demoted from Guest Services Manager to Front Desk Associate. (*Id.* ¶ 25.) As a result of this demotion, Plaintiff's compensation was reduced from approximately $15.45 per hour to $11.00 per hour. (*Id.*) In addition, Plaintiff's work hours were reduced from forty hours per week to thirty hours per week. (*Id.*) Collectively, these reductions decreased Plaintiff's total compensation by approximately fifty percent. (*Id.*) Furthermore, Schwartz informed Plaintiff that as a condition of his continued employment, Plaintiff would have to submit to regular psychotherapy sessions at his own expense, as well as weekly progress meetings with Schwartz. (*Id.* ¶ 27.) Schwartz presented Plaintiff with a document, allegedly drafted by MCM, containing the above terms and conditions. (*Id.* ¶ 29.) Plaintiff contends that these conditions were intended to impose an undue burden and thereby compel Plaintiff to quit. (*Id.* ¶ 28.)

In addition, Schwartz instructed Plaintiff that he was forbidden from discussing his medical condition with other employees and was not permitted to inform his coworkers about the mandatory psychotherapy sessions. (*Id.* ¶ 32–33.) Schwartz also began subjecting Plaintiff to close and harassing scrutiny in the workplace. (*Id.* ¶ 34.)

On or about March 5, 2015, Schwartz sent emails to his superiors at Westin and to MCM reporting a complaint made by one of Plaintiff's coworkers that Plaintiff had made a racially insensitive comment. (*Id.* ¶ 36.) Specifically, Schwartz inquired of MCM whether or not this statement was grounds for termination. (*Id.*) MCM responded by

4

directing Schwartz to solicit statements from other employees who witnessed similar conduct. (*Id.* ¶ 37.) Schwartz followed this advice and subsequently obtained a statement from the hotel bookkeeper that Plaintiff had made joking statements about a delivery box potentially containing a bomb. (*Id.* ¶ 38.) Shortly thereafter, Schwartz fired Plaintiff for making inappropriate comments. (*Id.* ¶ 39.)

Counts II and III of the Complaint pertain to the alleged actions of MCM. Count II alleges interference with Plaintiff's FMLA rights by (1) requiring Plaintiff to take more leave than was necessary to treat his serious health condition; (2) requiring a third medical opinion when the circumstances did not warrant such an opinion; (3) requiring that Plaintiff obtain treatment not prescribed by his healthcare providers; and (4) not restoring Plaintiff to the position of employment held when his leave commenced. Count III maintains that MCM retaliated against Plaintiff for exercising his FMLA rights by (1) demoting Plaintiff and conditioning his continued employment on ongoing psychotherapy treatment at his own expense; (2) subjecting him to close and harassing scrutiny; and (3) terminating Plaintiff's employment based on pretextual reasons.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

5

which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

MCM moves to dismiss the FMLA claims on the grounds that it is not Plaintiff's employer within the meaning of the statute. Furthermore, MCM asserts that even if it is Plaintiff's employer, Plaintiff has not pled sufficient facts to state a plausible claim of interference or retaliation under the FMLA.

MCM first argues that Plaintiff has failed to allege that MCM is Plaintiff's employer as contemplated by the FMLA. (Defs.' Mem. in Supp. Mot. Dismiss 5–8, ECF No. 10.) Essential to a viable FMLA claim is proof that MCM is Plaintiff's "employer," which the FMLA defines in relevant part as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).

The Fourth Circuit is silent on the proper test for defining "employer" under the FMLA. However, the Fourth Circuit has adopted the "economic reality" test for determining what constitutes an "employer" under the Fair Labor Standards Act (FLSA). *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016); *see also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (outlining "economic reality" test and applying it in context of FLSA); *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983) (same). The "economic reality" test focuses on whether a putative employer had "supervisory authority" over the employee. *Crittendon v. Arai Americas, Inc.*, No. 2:13-CV-567, 2014 WL 354517 (E.D. Va. Jan. 28, 2014) (citing *Haybarger v. Lawrence Cty. Adult Probation and Parole*, 667 F.3d 408, 417 (3d Cir. 2012)). Many courts have recognized that the statutory definition of employer in the FMLA is "materially identical with, the definition of 'employer' used in the Fair Labor Standards Act (FLSA)." *Wascura v. Carver*, 169 F.3d 683, 685–86 (11th Cir. 1999); *see also Ainsworth v. Loudon Cty. Sch. Bd.*, 851 F.Supp.2d 963, 973 n.3 (E.D. Va. 2012) (citing *Weth v. O'Leary*, 796 F.Supp.2d 766, 775 (E.D. Va. 2011)) (noting the nearly identical definition of employer in both the FMLA and FLSA). Accordingly, most courts addressing the issue have drawn upon the FMLA definition of "employer" and relied on the "economic reality" test. *See e.g. Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415 (2d Cir. 2016); *Haybarger, 667 F.3d 408; Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2003); *Crittendon*, 2014 WL 354517 at *4. This Court will follow suit by applying the Fourth Circuit's FLSA "economic reality" test to determine whether MCM is Plaintiff's employer under the FMLA.

The relevant factors delineating supervisory authority under the "economic reality" test include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Kerr*, 824 F.3d at 83 (quoting *Herman*, 172 F.3d at 139). "No one of the four factors standing alone is dispositive." *Herman*, 172 F.3d at 139. Instead courts must examine "any relevant evidence . . . so as to avoid having the test confined to a narrow legalistic definition." *Id.* Consequently, the economic reality test "depends on the totality of the circumstances rather than on 'technical concepts of the employment relationship.'" *Haybarger*, 667 F.3d at 418 (quoting *Hodgson v. Arnheim & Neely, Inc.*, 444 F.2d 609, 611 (3d Cir. 1971)).

Although the term "employer" is defined broadly in the FMLA, the Court declines to extend employer liability to the extent suggested by Plaintiff. Measured by the "economic reality" test, Plaintiff can only satisfy the first two factors. Plaintiff's Complaint offers no plausible basis for finding that MCM determined the rate and method of Plaintiff's payment or maintained Plaintiff's employment records. In fact, the only allegations in the Complaint that deal with MCM in any capacity are the allegations that MCM drafted a document recommending that Westin implement "additional terms and conditions of [Plaintiff]'s employment" and "direct Schwartz to get statements from other employees." (Compl. ¶ 29, 37.) Consequently, Plaintiff must rely on the alternative argument that MCM (1) had the power to hire and fire Plaintiff and (2) supervised and controlled Plaintiff's work schedule or conditions of employment. Even

8

viewed in the light most favorable to the Plaintiff, the Complaint fails to support such an inference.

Plaintiff has not sufficiently pled that MCM had the power to hire and fire Plaintiff. The Complaint asserts that "Westin hired [Plaintiff] in March 2010 as a Front Desk Associate" and that "Westin promoted [Plaintiff] . . . in June 2010" and "October 2011." (*Id.* ¶ 11.) Furthermore, in its memorandum opposing MCM's Motion to Dismiss, Plaintiff appears to concede that MCM had no explicit authority to fire Plaintiff. (Mem. in Supp. Mot. to Dismiss 13, ECF No. 13.) ("[a] fair inference to be drawn from this allegation is that [MCM] . . . *advised* Schwartz to proceed with [Plaintiff]'s termination on the pretextual grounds of 'inappropriate comments.') (emphasis added). Plaintiff thus relies solely on Schwartz's email correspondence with MCM to support the inference that MCM had the power to fire Plaintiff. This inference is unsupported by the record. At most, the Complaint alleges that MCM recommended firing Plaintiff. And even that allegation is dubious.

Even assuming *arguendo* that MCM counseled Westin to fire Plaintiff, such advice would not plausibly support the conclusion that MCM was acting in anything more than an outside advisory capacity. Circumstances in which a party has been deemed an FMLA employer absent explicit firing authority uniformly involve *de facto* authority. *See e.g. Graziadio,* 817 F.3d at 424 (holding human resources manager was FMLA employer where human resources director conducted investigation into employee's FMLA leave and recommended termination), *Haybarger,* 667 F.3d at 419 (holding supervisor was FMLA employer because "but for the substantial authority

9

wielded by [the supervisor], [the employer] would not have exercised his ultimate authority to fire [the employee]"). That level of authority is not present in the case at hand. Nothing in the Complaint suggests that MCM had anything more than advisory authority over Plaintiff's employment.

Additionally, Plaintiff has not sufficiently pled that MCM supervised and controlled the terms and conditions of Plaintiff's employment. The only allegation in the Complaint bearing on this issue is the assertion that the document containing the terms and conditions of Plaintiff's employment after returning from leave "was drafted by MCM and . . . had been formulated by MCM in consultation with Westin." (Compl. ¶ 29.) In fact, Plaintiff's Complaint explicitly alleges that Westin—and not MCM—supervised and controlled Plaintiff's employment. (*Id.* ¶ 56, 66) ("[d]uring all times pertinent to this Complaint, Westin controlled the terms and conditions of Hughes's employment"). Merely acting as an outside consultant, as described in the Complaint, without more, does not rise to the level of supervision and control envisioned by the economic realities test. *Compare Crittendon*, 2014 WL 354517 at *5 (holding human resources manager was not FMLA employer because mere job title and signatures on FMLA paperwork did not amount to "substantial control"), *with Caire v. Conifer Value Based Care, LLC*, 982 F.Supp.2d 582, 598 (D. Md. 2013) (holding human resources director was FMLA employer where human resources director received and reviewed employee's FMLA requests, signed employee's termination letter, directly communicated with employee and threatened employee with legal action). In this case there is no allegation of direct contact between Plaintiff and MCM, much less an allegation that

10

MCM exercised the requisite level of control over Plaintiff's FMLA rights and employment generally. Therefore, the Court is unwilling to extend FMLA liability to a third-party consultant who had no direct contact with Plaintiff.[1]

Turning to the substance of Count II and III, because the Court finds that MCM is not Plaintiff's employer within the meaning of the FMLA, the Court does not reach the issue of interference and retaliation under the FMLA. Accordingly, Counts II and III against MCM will be dismissed with prejudice.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (ECF No.9) will be granted as to Counts II and III against MCM.

An appropriate Order will accompany this Memorandum Opinion.

The clerk is directed to send a copy of this Opinion and the accompanying Order to all counsel of record.

/s/
Henry E. Hudson
United States District Judge

Date: Nov. 4, 2016
Richmond, Virginia

---

[1] A contrary holding would have a chilling effect on consulting firms dealing with employment matters and open the door to FMLA liability for detached third-parties ranging from human resource companies to law firms.